IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BILL LIETZKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 2:07CV588-ID |
| CITY OF MONTGOMERY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the undersigned Magistrate Judge upon Plaintiff's filing of a "Complaint." Compl. (Doc. #1) at 1. For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that the federal claims be DISMISSED. Having recommended the dismissal of the federal claims, the Magistrate Judge further RECOMMENDS that the Court DECLINE to exercise supplemental jurisdiction over the state law claims.

**I.   BACKGROUND**

Plaintiff Bill Lietzke (" Lietzke"), *pro se*, commenced this action on June 11, 2007, in the Western District of Washington. On June 19, 2007, United States District Judge Robert S. Lasnik entered an Order transferring the action to the Middle District of Alabama. Order of June 16, 2007 (Doc. #3) at 3. Plaintiff's Complaint - neither sworn nor notarized - asserts a civil rights action under 42 U.S.C. § 1983 (2000) for monetary damages and miscellaneous relief. Compl. (Doc. #1) at 4. Lietzke names the City of

Montgomery, Bobby Bright (Mayor Bright), Mayor of the City of Montgomery, Art Baylor (Chief Baylor), Chief of the Montgomery Police Department, and Walter J. Byars (Byars), City Attorney for the City of Montgomery, as Defendants. Compl. (Doc. #1) at 1-2.[1] The Complaint alleges that Defendants violated Lietzke's constitutional rights by subjecting him to harassment, unlawful searches and seizures, and unlawful detentions, and committed a number of state law torts, including assault, false imprisonment, negligence, "menacing" as well as "first degree criminal trespassing." Compl. (Doc. #1) at ¶¶ 59-82. Lietzke also claims that Defendants have violated his rights to freedom of speech and freedom of assembly. Id. at ¶ 61. Lietzke does not assert any of these particular claims against any one Defendant, but instead, generally alleges all claims against all Defendants. These claims arise from 54

---

[1] Plaintiff's Complaint repeatedly and consistently refers to Mayor Bright, Chief Baylor, and Byars as "City of Montgomery Defendants." E.g., Compl. (Doc. #1) at ¶¶ 59-82. Moreover, Lietzke lists the Montgomery Police Department's physical address as the mailing address for Chief Baylor, and the Office of the Mayor's physical address as the mailing address for Mayor Bright. For Byars, he lists the "Legal Department" at the Office of the Mayor's mailing address. Compl. (Doc. #1) at 1-2. Furthermore, in describing each incident upon which he claims his constitutional rights have been violated, he sets forth the allegations based upon the agency relationship between unidentified police officers and the "City of Montgomery Defendants." E.g., id. at ¶¶ 43-58. These facts imply that Plaintiff brought this suit against them in their official capacities. Under the applicable standard of review, the Court will construe the allegations in Plaintiff's favor and assume that Lietzke intended to bring the action against Chief Baylor, Mayor Bright, and Byars in their official capacities. But see McDermott v. Brevard County Sheriff's Office, 2007 WL 788377 at *3 (M. D. Fla. Mar. 14, 2007) (construing the complaint as naming defendants in their individual capacity because plaintiffs titled their claim as against "Individual Defendants").

incidents, of which only 15 are relevant, between June 1997 to March 2007.[2] Id. at 5-21.

Specifically, on July 2, 2005, Lietzke claims Defendants, "by and through" their agent police officers, parked patrol cars on the premises of Plaintiff's residence. He claims that two unidentified police officers "yelled and screamed" at him from the third floor, "Quit staring at me." Compl. (Doc. #1) at ¶ 43. That same day, he claims that Defendants, "by and through" their agent police officers, detained Plaintiff unlawfully and asked him if he was "alright," because "[s]omebody called us; Somebody that [has] seem you for a long time called us." Id. at ¶ 44.

On August 3, 2005, Lietzke claims Defendants, "by and through" their agent police officers, stopped a patrol car in traffic, jumped out of the car, and "grabbed" and "pushed" Plaintiff onto the patrol car. He alleges the officers "continued to taunt, bully, and terrorize" him while gripping Plaintiff's arms and garments to force his hands onto the car. He also claims the officers kicked his legs to force him to spread them open. The officers, he asserts, pushed him to the ground. He claims they stated "Have a seat on the ground." And, "[s]omebody called us saying you were jumping out in front of cars." Compl. (Doc. #1) at ¶ 45.

The following month, on September 18, 2005, Lietzke claims Defendants, "by and through" their agent police officers, "pounded" on his apartment door at 3:15 a.m. "with

---

[2] To the extent Lietzke attempts to raise claims challenging events occurring before June 11, 2005, those claims are barred by the statute of limitations. See Dukes v. Smitherman, 32 F.3d 535, 537 (11th Cir. 1994). The undersigned notes that 39 of Lietzke's challenged incidents occurred before June 11, 2005. Compl. (Doc. #1) at ¶¶ 4-42.

heavy objects." Lietzke claims when he opened the door, the officers asked stated that they wanted to enter his apartment to see who else was there and what was "going on" inside. Lietzke alleges that he did not give the officers permission to enter his apartment, but they did so, shining their flashlights and searching his apartment. Compl. (Doc. #1) at ¶ 46.

On October 23, 2005, Lietzke claims that while he was "flagging down cars, walking in the middle street (sic), [and] trying to get cars to stop," Defendants, "by and through" their agent police officers, falsely imprisoned him. Compl. (Doc. #1) at ¶ 47. About six weeks later, on December 2, 2005, Defendants, "by and through" their agent police officers, approached the 500 block of South Perry Street, Montgomery, Alabama, to "encounter a suspicious white male who accosted" Plaintiff. Lietzke alleges that the "City of Montgomery Defendants" proceeded to "harass and bully" Plaintiff by yelling from the patrol car. Compl. (Doc. #1) at ¶ 49.

Approximately six months later, on or about June 18, 2006, Lietzke claims that Defendants, "by and through" their agent police officers, approached Plaintiff at the scene of an automobile accident on South Perry Street, in Montgomery, Alabama, and bullied and harassed him when Plaintiff watched an injured passenger get placed into an ambulance. Lietzke alleges the City of Montgomery Defendants exclaimed, "Get out of my way." "Get your butt back over there and out of my way." Compl. (Doc. #1) at ¶ 50.

Almost three months later, on or about September 6, 2006, Defendants, "by and

through" their agent police officers, harassed Plaintiff from the window of a patrol car by asking him where he was "supposed to be." Compl. (Doc. #1) at ¶ 51. That same day, he claims Defendants, "by and through" their agent police officers, parked a patrol car in front of Plaintiff and his neighbor and harassed them by asking what Plaintiff had stated. Compl. (Doc. #1) at ¶ 52.

On September 15, 2006, nine days later, Defendants, "by and through" their agent police officers, startled and harassed Plaintiff from the window of a patrol car. City of Montgomery Defendants, he alleges, approached Plaintiff "on the one way street opposite traffic, jumped out of the patrol car, and unlawfully detained . . . Plaintiff." He claims that City of Montgomery Defendants alleged that "some persons called . . . Defendants and stated that . . . Plaintiff was running in the middle of the street." Compl. (Doc. #1) at ¶ 53.

About three months later, on December 6, 2006, Defendants, "by and through" their agent police officers, pulled off the interstate, stopped in front of Plaintiff, and harassed Plaintiff from the window of a patrol car. Lietzke claims City of Montgomery Defendants stated that "some persons called . . . Defendants and stated that they saw . . . Plaintiff walking." Compl. (Doc. #1) at ¶ 54. Lietzke further contends that a week later Defendants, "by and through" their agent police officers, sped through Plaintiff's neighborhood and entered a law office located at 566 Perry Street, Montgomery, Alabama, where Plaintiff was standing. Compl. (Doc. #1) at ¶ 55. The officers, he

claims, grabbed Plaintiff by the shoulders and arms, handcuffed and "dragg[ed]" him out of the law office. Id. Once outside, Lietzke claims the officers "continued to taunt, bully, and terrorize" him by slamming his head onto the patrol car and placing him inside the patrol car, but moments later, released him without charge. Id.

About a month later, Lietzke contends that, on January 8, 2007, Defendants, "by and through" their agent police officers, entered his "residential structure" without permission at 3:10 a.m. with their pistols pointed at Plaintiff. Id. at ¶ 56. He claims the officers shined their flashlights around his residence and "[f]or absolutely no reason" taunted, bullied, and terrorized Plaintiff in stating: "Let me see your hands, let me see your hands;" "Get down on the floor; get down on the floor." Id. He claims that they grabbed Plaintiff inside his bedroom and forced his head to hit the floor. Id. Lietzke alleges that he was handcuffed during the incident and ordered to state his name; he alleges that the police officers stated that if Plaintiff did not state his name, they would take him to jail. Id. Sergeant "Bruce" then entered Plaintiff's residence and told the officers to release Plaintiff, which subsequently occurred. Id.

He also contends that, on January 19, 2007, Defendants, "by and through" their agent police officers, "jumped out the[ir] patrol car" near 547 South Perry Street in Montgomery, Alabama, and "beckoned [ ] Plaintiff by hand." Comp. (Doc. #1) at ¶ 57. He claims that the officers "followed and stalked" him, grabbed him by the arm, and pulled him to their patrol car, where the officers handcuffed and searched Lietzke while

he was forced to place his hands on the car. Id. Last, Lietzke claims that Defendants, "by and through" their agent police officers harassed Plaintiff from the window of a patrol car on March 4, 2007. Comp. (Doc. #1) at ¶ 58. He claims that the officers detained Plaintiff outside of a church, asking him whether he had somewhere to go and telling him that he could not "hang[ ] around the church if [he was not] going in[side] the church." Id.

Because Plaintiff is proceeding *in forma pauperis*, the Court is required under the provisions of 28 U.S.C. § 1915(e)(2)(B) to dismiss a case at any time if it determines that the action or appeal is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to the Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997). Upon review of Plaintiff's complaint and for the reasons that follow, the undersigned recommends that Plaintiff has not presented actionable claims and that *sua sponte* dismissal is therefore warranted. See Vanderberg v. Donaldson, 259 F.3d 1321, 1323 (11th Cir. 2001).

## II.    DISCUSSION

### A.    Criminal Trespassing Claim against All Defendants

As stated above, Plaintiff set forth a claim of "first degree criminal trespassing" against all Defendants. Compl. (Doc. #1) at 23. This claim is due to be dismissed, as no citizen has an enforceable right to institute a criminal prosecution. Linda R. v. Richard V., 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990). Accordingly, the undersigned Magistrate Judge recommends that Plaintiff's "first degree criminal trespassing" claim be dismissed against all Defendants.

### B.    Claims against the City of Montgomery

To the extent Lietzke has sued Mayor Bright, Chief Baylor, and Byars in their official capacities, he has essentially sued the City of Montgomery. Shows v. Morgan, 40 F. Supp. 2d 1345, 1361 (M. D. Ala. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 166) (1985) (Official-capacity lawsuits are, "in all respects other than name, . . . treated as a suit against the entity."); see also Pompey v. Broward County, 95 F.3d 1543, 1545-46 n.2 (11th Cir. 1996). The Magistrate Judge finds that Lietzke has failed to state a claim upon which relief can be granted.

The Supreme Court has placed strict limitations on municipal liability under section 1983. Municipalities may not be held liable for constitutional deprivations on the

theory of *respondeat superior*. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001). It is well-settled that to sue a municipality under § 1983, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005); see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978) (holding that a § 1983 action against a governmental body may be brought where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or those "visited pursuant to governmental custom").[3]

A local government body is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. A custom is a practice that is so settled and permanent that it takes on the force of law." Cooper, 403 F.3d at 1221 (quotation and citations omitted). "There are three ways to show a governmental policy or custom: (1) an express policy; (2) a

---

[3] A "threshold identification of a custom or policy" should initially be made to ensure that a municipality is "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority." <u>Hyath v. City of Decatur</u>, 2006 U.S. Dist. LEXIS 21184, at *29-30 (N. D. Ga. Mar. 28, 2006).

"[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986); <u>see also</u> <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability."). "State and local positive law determine whether a particular official has final policymaker authority for § 1983 purposes." <u>Cooper</u>, 403 F.3d at 1221.

The discussion of these principles in <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1343 (11th Cir. 1994), is helpful. In <u>Church</u>, the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." <u>Church</u>, 30 F.3d at 1343. To establish the existence of a practice or custom under the second prong, "it is generally necessary to show a persistent and widespread practice." <u>Id.</u> at 1345. Section 1983 only "imposes liability on a government that,

10

under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 692. Put differently, the governmental policy or custom must be the moving force behind the constitutional deprivation. Farred v. Hicks, 915 F.2d 1530, 1532-33 (11th Cir. 1990).

Liberally construing Plaintiff's complaint, Lietzke appears to allege that Mayor Bright, Chief Baylor and Byars "have permitted . . . a custom and policy of menacing, negligence, assault and harassment against [him]." See Compl. (Doc. #1) at ¶ 66. This argument fails as a matter of law for two reasons. First, "[t]he Constitution affords no protection against ordinary negligence, even if that negligence is committed by a public official acting in his official capacity." Green v. Lisa's Chinese Take-Out, 2006 WL 1134131 at *1 (S. D. Ga. Apr. 25, 2006) (citing Daniel v. Williams, 474 U.S. 327, 328-32 (1986)); see also Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 143 (2d Cir. 1981) ("[O]rdinary negligence by itself could not establish a cause of action under [ Section] 1983[.]"). Second, while Plaintiff has set forth a series of incidents involving the "City of Montgomery Defendants" "by and through" their agent police officers, Plaintiff has failed to allege any facts showing that Mayor Bright, Chief Baylor and Byars deliberately chose to menace, assault, or harass Plaintiff. Rather, Plaintiff's claims are based entirely on the agency relationship of Mayor Bright, Chief Baylor, and Byars with the unidentified Montgomery police officers. As stated above, there is no *respondeat superior* liability under § 1983. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th

Cir. 2001). Plaintiff therefore fails to state a claim as a matter of law. Id.

Moreover, the language of § 1983 plainly requires an affirmative causal connection between the actions taken by the defendant and the constitutional deprivation. Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995). Lietzke also fails to allege any facts in his Complaint, which indicate a causal connection between Mayor Bright, Chief Baylor and/or Byars and the acts of the unidentified police officers. Because Lietzke's allegations concern the acts of unidentified individual police officers, it is inconceivable that the City of Montgomery could be liable to Lietzke based on these particular facts. Cf. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Based on the foregoing, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's claims against the City of Montgomery are due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).[4]

### C. Claims against Mayor Bright, Chief Baylor and Byars

All claims against Defendants Mayor Bright, Chief Baylor and Byars are due to be dismissed for another reason. These claims are based solely upon their status as supervisors. Under § 1983, as provided above, liability will not be imposed solely on the

---

[4]Lietzke's Complaint states that this "custom and policy" has effected "others in similar situations." Compl. (Doc. #1) at ¶ 66. While this language could be read to imply that Lietzke might add other parties to the litigation, he has not listed any so-called "John Doe" plaintiffs in his Complaint. Moreover, even if other parties were added, for the reasons explained above, Lietzke has failed to state a claim upon which relief can be granted as a matter of law.

basis of *respondeat superior* or vicarious liability.  See Monell v. Dep't of Social Serv., 436 U.S. 658, 690-92 (1978); Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995); LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993), cert. denied, 510 U.S. 1164 (1994).  Supervisors, like Mayor Bright, Chief Baylor, and Byars are not wholly immune from suit under § 1983.  Supervisory liability attaches only when the supervisor personally participates in the allegedly unconstitutional acts of his subordinates or where the actions of the supervising official bear a causal relationship to the alleged constitutional deprivation.  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

    In this case, Plaintiff's Complaint fails to allege that Mayor Bright, Chief Baylor and Byars personally participated in the incidents alleged.  Plaintiff's Complaint also fails to show that their actions bear a causal relationship to the incidents.  Plaintiff's alleged deprivations occurred over a two-year period with repeated gaps of time in between the incidents.  For instance, a six-month gap of time occurred between the alleged incident on

December 2, 2005, and the June 18, 2006 incident. A three-month gap of time followed the June incident, as the next alleged incident occurred on September 6, 2006. The repeated gaps in time suggest that these incidents were isolated occurrences. Moreover, while Lietzke has asserted fifteen incidents over this two-year period, less than half of the incidents occurred within a month of each other. Accordingly, Plaintiff has failed to set forth facts demonstrating that the alleged deprivations were obvious, flagrant, rampant, and of continued duration. Indeed, three alleged incidents (July 2, 2005, September 15, 2006, and December 6, 2006) present facts in which the unidentified officers seem to offer assistance in response to calls received about Plaintiff's well-being, rather than harass, menace, or assault him. Thus, "a few isolated instances of harassment will not suffice," Braddy, 133 F.3d at 802, to constitute a history of widespread abuse sufficient to notify Mayor Bright, Chief Baylor and Byars. Compare Clark v. Evans, 840 F.2d 876, 885 (11th Cir. 1988) (per curiam) ("[I]t is clear that four cases [alleging a prison policy of disregarding committal orders by state court judges] in four years would have been insufficient to put Evans [commissioner of the Department of Corrections] on notice, especially since the record is clear that such matters were handled at lower administrative levels and would not have come to the attention of Evans.") with Holland v. Connors, 491 F.2d 539, 541 (5th Cir. 1974) (per curiam) (vacating and remanding for factual development the district court's dismissal of a prisoner's section 1983 complaint alleging that the prison superintendent "was legally responsible for these acts of his subordinates,

14

despite the fact that the Superintendent was not present during the illegal questioning, because such practices were so widespread and had been standard procedure at the institution for so long that he was or must have been aware of them."). As the Complaint fails to set forth any facts suggesting that Mayor Bright, Chief Baylor and/or Byars had notice of the alleged constitutional deprivations, Plaintiff's claims against Mayor Bright, Chief Baylor, and Byars are due to be dismissed.

        **D.**     **State Law Claims Against All Defendants**

To the extent Lietzke's allegations may be construed as state law claims, his contentions are due to be dismissed. If the federal claims over which the court has original jurisdiction are dismissed, the court may decline to exercise jurisdiction over state law claims. See 28 U.S.C. § 1367(c)(3); McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1227 (11th Cir. 2002). In view of this Court's determination that the federal claims presented in Lietzke's Complaint should be dismissed, the Court concludes that his supplemental state law claims are also due to be dismissed. Id.

## III. CONCLUSION

Accordingly, for the reasons discussed above, it is the RECOMMENDATION of the Magistrate Judge that Lietzke's federal law claims be DISMISSED *sua sponte* without prejudice. Having recommended the dismissal of the federal claims, the Magistrate Judge further RECOMMENDS that the Court DECLINE to exercise supplemental jurisdiction over the state law claims. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before July 16, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this the 2nd day of July, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE