## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BILL LIETZKE**, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **2:07-CV-588-ID-WC** |
| | ) | |
| **CITY OF MONTGOMERY,** | ) | |
| **BOBBY BRIGHT**, **ART BAYLOR**, and | ) | |
| **WALTER BYARS**, | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND MOTION TO DISMISS

COME NOW Defendants City of Montgomery, Bobby Bright, Art Baylor, and

Walter Byars, by and through counsel, and as Answer to Plaintiff's Complaint state:

### A. RESPONSE TO ALLEGATIONS IN THE COMPLAINT

1.      Defendants deny all allegations in Plaintiff's Complaint and demand strict

proof thereof.

2.      Defendants deny that Plaintiff is entitled to any relief requested.

### B. DEFENSES

3.      Defendants affirmatively assert each of the following defenses to

Plaintiff's Complaint:

#### 1. General Denial

4.      Defendants generally deny all material allegations of the Complaint and

deny that Plaintiff is entitled to any relief.

#### 2. Failure to State a Claim

5.      Plaintiff's Complaint and each count and cause thereof fails to state a

cause of action against Defendants upon which relief can be granted.

**3. Statute of Limitations**

6.      Plaintiff's claims in Paragraphs 1 through 44 are barred by the statute of limitations because they arose more than two years before this action was commenced.

7.      The United States Supreme Court has held that: "Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." Wallace v. Kato 127 S.Ct. 1091, 1094 -1095 (2007), citing Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); and Wilson v. Garcia, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

8.      In Alabama, claims arising under 42 U.S.C. § 1983 are subject to a two-year personal injury statute of limitations. Parrish v. City of Opp, Ala., 898 F.Supp. 839, 841-842 (MD Ala. 1995). See also Anderson-Free v. Steptoe, 970 F.Supp. 945, 953 (MD Ala. 1997), citing Lufkin v. McCallum, 956 F.2d 1104, 1105 (11th Cir. 1992); and Ala. Code § 6-2-38(1) (Supp.1989).

**4. Failure to Present Claim**

9.      Plaintiff's claims are barred for failure to comply with *Code of Alabama* §11-47-23 (1975).

**5. Res Judicata**

10.     Plaintiff's claims are barred under *res judicata* to the extent his claims have been adjudicated in his prior lawsuits.

**6. Collateral Estoppel**

11.     Plaintiff's claims are barred under collateral estoppel to the extent any

issues raised in his Complaint have been adjudicated in his prior lawsuits.

## 7. Acts by Plaintiff

12.    Defendant pleads that Plaintiff was himself guilty of negligence, wantonness, recklessness, intentional acts, and criminal acts which proximately caused or contributed to the injuries and damages he claims.

## 8. Damages Limited

13.    The amount of damages against a municipality or employees are limited by *Code of Alabama* §§ 11-93-2 and 11-47-190 (1975).

## 9. Punitive Damages Not Available Against Municipalities

14.    Punitive damages are not available against municipalities under *Code of Alabama* § 6-11-26 (1975).

## 10. Punitive Damages Limited

15.    Punitive damages are limited by *Code of Alabama* § 6-11-21 (1975).

## 11. Law Enforcement Immunity

16.    Defendants are immune under Code of Alabama §6-5-338 (1975).

## 12. Governmental Immunity

17.    Defendants are immune under Code of Alabama §11-47-190 (1975).

## 13. Discretionary Function Immunity

18.    Defendants are immune under discretionary function immunity.

## 14. Good Faith and Qualified Immunity

19.    Defendants are immune under good faith and qualified immunity.

## 15. Legislative Immunity

20.    Defendants are immune under legislative immunity.

**16. Prosecutorial Immunity**

21.    Defendants are immune under prosecutorial immunity.

**17. Reasonable Suspicion and Probable Cause**

22.    To the extent Plaintiff claims he was the subject of illegal searches and/or seizures, Defendants aver there existed arguable or actual reasonable suspicion and/or arguable or actual probable cause for alleged searches or seizures.

**18. Waiver and Laches**

23.    Defendant pleads waiver and laches.

**19. General Issue**

24.    Defendants plead the general issue and deny any allegations not specifically denied.

## C. RESERVATION OF RIGHTS

Defendants reserve the right to amend its defenses as defenses are discovered and as permitted by the Court.

## D. MOTION TO DISMISS

25.    Defendants respectfully move this Court to dismiss this case, and show as grounds the following:

26.    In examining Plaintiff's Complaint, there is evidence that Plaintiff is not of sound mind. Based on information and belief, Plaintiff Bill Lietzke has been diagnosed as a schizophrenic paranoid and has been involuntarily hospitalized several times for treatment, including as recently as 2003.

27.    Especially considering Plaintiff's past history and mental condition, this Complaint (Doc. 1) is clearly a byproduct of delusional thoughts. The Complaint is filled

with bizarre allegations, and Plaintiff's requested remedies are preposterous. Plaintiff demands: (a) immediate imprisonment of all defendants; (b) compensatory damages in excess of $1 billion; (c) the immediate and permanent "shut down" of the area surrounding Plaintiff's apartment complex, to exclude the general public, police officers and certain "African american [sic.] black folks" with "no business" there; and (d) that the city erect walls and fences to block off his area, and post signs, to include signs that say "NO PARKING, MINIMUM FINE $20,000.00."

28.    Plaintiff has previously filed at least seven lawsuits in courts all over the country making similar or identical allegations, all of which have been dismissed.

29.    Since 1986, Plaintiff has filed no less than five cases in state courts against the City of Montgomery, along with various officers and employees of the City.[1] *See e.g. Complaint*, 03-CV-2003-165, attached as **Exhibit A**; and *Complaint*, 03-CV-2003-1398 (originally assigned Jefferson County Circuit Court Case Number 01-CV-2003-2771), attached as **Exhibit B**.

30.    Defendants have received notice that Plaintiff has filed no less than three lawsuits against the City, and its officers or employees.[2] *See Complaint*, 2:03-CV-584-MEF-CSC (Doc. 1), attached as **Exhibit C**; *Complaint*, 2:07-CV-324-WHA-WC (Docs. 1-1, 1-2), attached as **Exhibit D**; and *Complaint*, 2:07-CV-588-ID-WC, (Doc. 1) filed herein.

---

[1] **03-CV-1986-1646**, filed 11/5/86, dismissed 11/25/86; **01-CV-1987-7473** filed in Jefferson County 11/4/87, dismissed 2/4/88; **03-CV-1999-3684** filed 12/14/99, dismissed with prejudice 3/16/00; **03-CV-2003-165**, filed in the Los Angeles County Superior Court (California) then later filed in Montgomery County Circuit Court 1/11/03, dismissed 4/4/03; and **03-CV-2003-1398** filed 5/22/03, dismissed 9/23/03.
[2] Plaintiff's first federal lawsuit against the City, **2:03-CV-584-MEF-CSC**, was filed in the Middle District of Alabama. Then, **2:07-CV-324-WHA-WC** was filed in the District of Maryland, before it was transferred to the Middle District. The instant case, **2:07-CV-588-ID-WC**, was filed in the Western District of Washington, before it was transferred to the Middle District. Upon information and belief, a fourth lawsuit has been filed by Plaintiff in an Oregon federal court.

31.     Plaintiff's attempts at forum shopping are obvious. After having his cases dismissed in Montgomery, Plaintiff began filing his claims elsewhere, from Circuit Court in Jefferson County, Alabama, to United States District Courts in Washington and Maryland.[3]

32.     Plaintiff's attempts to circumvent the legal system are willful. In one case, Plaintiff included a note saying "Do not serve upon the Defendants" referring to eight of the ten pages of his Complaint. **Exhibit B**, at 3. Plaintiff even goes so far as to write on a Complaint filed against Montgomery County Probate Judge Reese McKinney and Montgomery County Sheriff D.T. Marshall, "DO NOT TRANSFER TO ALABAMA INCOMPETENT COURTS. THAT IS WHAT 'ALL OF THEM' WANT." *See Complaint*, 2:07-CV-383-WKW, attached hereto as **Exhibit E**.

33.     The instant Complaint (Doc. 1) is comprised entirely of allegations which are similar, if not identical, to those previously filed in the above-referenced lawsuits. It makes various allegations against "City of Montgomery Defendants" generally, and sometimes against "its agent police officers." This Complaint (Doc. 1) is a consolidation and (often verbatim) restatement of Plaintiff's claims and allegations as set out in Plaintiff's prior lawsuits including his most recent prior federal Complaint, which was dismissed by this Court only two months ago on May 16, 2007. *See* **Exhibits A - D**.

34.      Because Plaintiff is proceeding *in forma pauperis*, the Court is required under 28 U.S.C. § 1915(e)(2)(B) to dismiss a case at any time if it determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." (*Recommendation of Magistrate Judge*, 2:07-CV-324, Doc. 12, at 4-5).

---

[3] And possibly Oregon. See Note 2.

Defendants incorporate herein by reference the Magistrate Judge's analysis in his *Recommendation*, *Id.*, and *Recommendation of Magistrate Judge*, 2:07-CV-588 (Doc. 7).

35.     Here, as in Case Number 2:07-CV-324, Plaintiff's Complaint is due to be denied because, among other considerations, Plaintiff fails to state any claim upon which relief can be granted.

WHEREFORE, premises considered, Defendants respectfully request that this frivolous lawsuit be dismissed to avoid the use of scarce City resources, and further that Plaintiff be barred from filing future complaints in the United States District Court for the Middle District of Alabama without prior approval of a guardian or judge.

Respectfully submitted this 19th day of July 2007,

/s/ Allison H. Highley
Allison H. Highley (HIG024)
Associate City Attorney

OF COUNSEL
City of Montgomery
Legal Department
Post Office Box 1111
Montgomery, Alabama 36101
(334) 241-2050 Telephone

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2007, I served a copy of the foregoing on the Plaintiff by e-filing it and depositing a copy in the U.S. mail, first-class postage pre-paid, addressed to:

Bill Lietzke
547 South Perry Street, Apt. 10
Montgomery, Alabama 36104

/s/ Allison H. Highley
Allison H. Highley (HIG024)

# Exhibit A

SH

RECEIVED

2 OCT 21 P3 57

PRESIDING JUDGE
LOS ANGELES SUPERIOR COURT

WAS

1   BILL LIETZKE

2   547 SOUTH PERRY STREET, APT.  10

3   MONTGOMERY, ALABAMA  36104

4   (334) 834-8602

5

6   PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

7   ATTENTION: WILLIAM A. SHASHY, CIRCUIT JUDGE

8   TO: ~~William A. Shashy~~, JUDGE CIRCUIT COURT OF Montgomery County

9   ~~SUPERIOR COURT OF THE STATE OF CALIFORNIA~~

10  FIFTEENTH JUDICIAL CIRCUIT ~~FOR THE COUNTY OF LOS ANGELES~~

11

12  BILL LIETZKE,                          )   CASE NUMBER

13                          PLAINTIFF, )

14  V.                                     )   COMPLAINT, PROGRESSIVE HARASSMENT

15  CITY OF MONTGOMERY, BOBBY BRIGHT,      )

16                          DEFENDANT. )

17

18      1.  The Plaintiff, Bill Lietzke, hereby makes claim against the Defendant,

19  City of Montgomery, Bobby Bright, for racial discrimination damages and personal

20  injuries resulting from the negligent and wanton acts that were discovered when

21  the Plaintiff suffered damages from the discriminatory practices and progressive

22  harassment of the Defendant.

23      2.  The Plaintiff, Bill Lietzke, who resides at 547 South Perry Street,

24  Apartment 10, has been harassed continuously by the Defendant, City of Montgomery,

25  Bobby Bright in the State of Alabama since June 9, 1997.

26      3.  The Plaintiff, Bill Lietzke, has been injured and damaged as a result

27  of the treatment of the Defendant, City of Montgomery, Bobby Bright.

28

1        1.  The most recent incident of harassment is Tuesday afternoon, at 12:00p.m.,

2  September 17, 2002 when the Defendant patroling on South Lawrence Street in front

3  of Yvette Smiley Smith, C. P. A., Utility Regulatory Consulting, 575 South Lawrence

4  Street approached the Plaintiff directly behind Regions Mortgage, Inc., 555 South

5  Perry Street, less than ½ block from San Souci Apartments, 547 South Perry Street

6  and stopped the Plaintiff for no reason, and intentionally and unnecessarily

7  detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant

8  stated to the Plaintiff, standing outside upon the sidewalk on the streets, "Is that

9  your car The Plaintiff replied, "No.  I see where it was wrecked.  Did somebody hit

10  it?"  The Defendant responded, "I don't know."  The Plaintiff replied, "It's not my

11  car, and I don't know whose car it belongs to."  The Defendant responded, "Do you

12  work around here?"  The Plaintiff replied, "No."  The Defendant responded, "What's

13  your name?"  The Plaintiff replied, "Bill."  The Defendant responded, "Bill what?"

14  The Plaintiff replied, "Bill Lietzke."  The Defendant responded, "What you doing?"

15  The Plaintiff replied, "Nothing."  The Defendant responded, "Just standing there?"

16  The Plaintiff replied, "Just standing here."  The Defendant responded, "You got some

17  ID?"  The Plaintiff replied, "I got some ID in the house."  The Defendant responded,

18  "You live around here?"  The Plaintiff replied, "On that block in those apartments."

19  The Defendant responded, "Right over yonder?"  The Plaintiff replied, "Right over

20  yonder."

21        2.  The second most recent incident of harassment is Wednesday morning, at

22  11:15a.m., August 28, 2002 when the defendant patroling on South Street approached

23  the intersection of South Lawrence and South Streets, saw the Plaintiff cross the

24  street on the interstate overpass across the street from the MGM Travel, 669 South

25  Lawrence Street, 1½ blocks from San Souci Apartments, 547 South Perry Street,

26  approached the Plaintiff on the overpass ans stopped the Plaintiff without

27  reasonable justification therefor, and intentionally and unnecessarily detained the

28  Plaintiff without reasonable justification therefor.

1    Thereafter, the Defendant stated that someone called them stating that the Plaintiff

2    is climbing over the fence when the Plaintiff had broken no laws, and when the

3    Plaintiff was in a proximity where there was no crime. The Plaintiff replied,

4    "Somebody called you three years ago and said I fixing to jump off the bridge." The

5    Defendant responded, "You weren't going to do that, were you?" The Plaintiff

6    replied, "No. I'm alright."

7         3. The third most recent incident of harassment is Tuesday afternoon, at

8    2:00p.m., July 16, 2002 when the Defendant patroling on Madison Avenue across the

9    street from the Madison Hotel, 120 Madison Avenue approached the intersection of

10   South Lawrence and Madison Streets, approached the Plaintiff standing outside upon

11   the sidewalk and stopped the Plaintiff for no reason, and intentionally and

12   unnecessarily detained the Plaintiff without probable cause therefor. Thereafter,

13   the Defendant stated, "You need some help?" The Plaintiff replied, "No." The

14   Defendant responded, "I thought you were waving at me." The Plaintiff replied, "If

15   I need some help, I'll let you know."

16        4. The fourth most recent incident of harassment is Thursday night, at 8:15

17   p.m., June 20, 2002 when the Defendant patroling on South Lawrence Street across the

18   street from the law offices of Esco & Benson, LLC, Bruce B. Stone, P. C., David G.

19   Flack, and Gene Spencer, 547 South Lawrence Street approached the Plaintiff standing

20   outside upon the sidewalk on the streets at The Center for Families, 530 South

21   Lawrence Street and San Souci Apartments, 547 South Perry Street and stopped the

22   Plaintiff for no reason, and intentionally and unnecessarily detained the Plaintiff

23   without probable cause therefor. Thereafter, the Defendant stated to the Plaintiff,

24   "How's it going, what are you doing, where 'bout you live, now, why you hangin'

25   around here" when the Plaintiff had broken no laws, and when the Plaintiff was in a

26   proximity where there was no crime. When the Defendant proceeded towards the

27   entrance of The Center for Families and a suspicious black woman approached the area,

28   the Plaintiff pointed out to the Defendant the woman is trespassing both premises.

1       5.  The fifth most recent incident of harassment is Tuesday morning, at 9:45

2   a.m., April 16, 2002 when the Defendant approached the intersection of South Union

3   and South Streets ½ mile southeast of downtown Montgomery, saw the Plaintiff cross

4   South Union Street, an exit ramp off Interstate 85, passed the Plaintiff walking on

5   South Street, circled the block, approached the Plaintiff in front of Jim Massey's,

6   531 South Street and stopped the Plaintiff for no reason, searched the Plaintiff

7   for no reason, and intentionally and unnecessarily detained the Plaintiff without

8   probable cause therefor.  Thereafter, the Defendant forced the Plaintiff to put his

9   grocery bags down, and forced the Plaintiff to place his hands on the police car

10  inside the parking lot of Jim Massey's, somewhere the Plaintiff doesn't go.  The

11  Defendant proceeded to interrogate the Plaintiff.  The Defendant stated there was a

12  capais warrant out on the Plaintiff for the Plaintiff's arrest.  When the Plaintiff

13  replied he didn't believe that, the Defendant responded, "You don't have to believe

14  it, it's there.  I can take you to jail just to prove . . "  "I don't want to take

15  you to jail on just 1 capais warrant."  The Defendant inquired if the Plaintiff

16  knew why there was a warrant on him.  The Plaintiff replied that he was arrested in

17  1999 for just crossing a public street known as the Mobile Highway, 3 miles

18  southwest of downtown Montgomery, and posted bail bond of $100.00.  A hearing was

19  set 1 month later, and the Plaintiff refused to appear at the hearing.

20      6.  The sixth most recent incident of harassment is Thursday afternoon, at

21  4:30p.m., December 27, 2001 when the Defendant patroling on South Lawrence Street

22  passed the Plaintiff in the parking lot of San Souci Apartments, across the street

23  from the law offices of Esco & Benson, LLC, Bruce B. Stone, P. C., David G. Flack,

24  and Gene Spencer, 547 South Lawrence Street, circled the block, entered the parking

25  lot of Regions Mortgage, Inc., 555 South Perry Street, next door to San Souci

26  Apartments, 547 South Perry Street, proceeded to the South Lawrence Street exit and

27  stopped the Plaintiff for no reason, and intentionally and unnecessarily detained

28  the Plaintiff and filmed the Plaintiff without probable cause therefor.

1   Thereafter, the Defendant used a video camera to film the Plaintiff without consent
2   when the Plaintiff had broken no laws, and when the Plaintiff was in a proximity
3   where there was no crime.  The Defendant asked the Plaintiff if the Plaintiff needs
4   some help.

5       7.  The seventh most recent incident of harassment is Monday morning, at
6   8:45a.m., December 24, 2001 when the Defendant exit the law offices of Shinbaum,
7   Abell, Mcleod, and Vann, P. C., 566 South Perry Street across the street from
8   Regions Mortgage, Inc., 555 South Perry Street and San Souci Apartments, 547 South
9   Perry Street, approached the Plaintiff standing outside upon the sidewalk on the
10  streets at the law offices of Holloway, Elliott, and Moxley, LLP, 556 South Perry
11  Street and stopped the Plaintiff for no reason, and intentionally and unnecessarily
12  detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant
13  stated, "How's it going, are you waiting for someone, what are you doing here, do
14  you live around here?"  The Defendant accused the Plaintiff of "staring at the
15  building."  The Defendant further stated, "You look suspicious.  Maybe you shouldn't
16  hang around here" when the Plaintiff had broken no laws,  and when the Plaintiff
17. was in a proximity where there was no crime.

18      8.  The eighth most recent incident of harassment is Monday afternoon, at
19  1:00p.m., December 10, 2001 when the Defendant patroling on Montgomery Street ½
20  block from the U. S. Post Office, downtown station, 135 Catoma Street approached the
21  Plaintiff in front of the Davis Theatre for the Performing Arts, 251 Montgomery
22  Street and stopped the Plaintiff for no reason, and intentionally and unnecessarily
23  detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant
24  inquired if the Plaintiff knows Jeff, last name unknown.  When the Plaintiff asked
25  the Defendant what was the situation, the Defendant responded that he'd got a call
26  stating that Jeff, last name unknown, was somewhere downtown drunk and intoxicated
27  when the Plaintiff had broken no laws, and when the Plaintiff was in a proximity
28  where there was no crime.

9.   The nineth most recent incident of harassment is Wednesday morning, at 9:45p.m., November 28, 2001 when the Defendant patroling on South Lawrence Street ½ block from the Amsouth Bank, 201 Monroe Street approached the Plaintiff walking on the sidewalk and stopped the Plaintiff without reasonable justification therefor, and intentionally and unnecessarily detained the Plaintiff without reasonable justification therefor.  Thereafter, the Defendant exclaimed from the vehicle, "Get somewhere."  The Plaintiff replied, "What?"  The Defendant responded, "You heard me, get somewhere" when the Plaintiff had broken no laws, and when the Plaintiff was in a proximity where there was no crime.  When the Plaintiff asked the Defendant why, the Defendant responded that he'd got a call stating that the Plaintiff was begging for money.  When the Plaintiff denied allegations of begging for money, the Defendant maintained, "Get somewhere."

10.   The tenth most recent incident of harassment is Thursday afternoon, at 2:00p.m., September 13, 2001 when the Defendant patroling on North Perry Street saw the Plaintiff cross North Perry Street in front of Mama's Sack Lunches, 21 North Perry Street and stopped the Plaintiff for no reason, and intentionally and unnecessarily detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant stated, "Walk on the sidewalk, not in the street" when the Plaintiff crossed North Perry Street without obstructing traffic.  In the recent past, the the Defendant has ordered the Plaintiff not to go on the sidewalks at the Alabama Power Company and the City Hall, and the Defendant has ordered the Plaintiff not to go on Second Street, although Second Street is a public street.  The Defendant further stated that the Defendant is going to take the Plaintiff to jail if he goes back on the sidewalks.

11.   The eleventh most recent incident of harassment is Sunday morning, at 9:30a.m., September 2, 2001 when the Defendant patroling on South Perry Street across the street from the First Baptist Church, 305 South Perry Street approached the Plaintiff in front of Harbin's Stern Bros. Office Furniture and Supplies,

1  300 South Perry Street and stopped the Plaintiff without reasonable justification

2  therefor, and intentionally and unnecessarily detained the Plaintiff without

3  reasonable justification therefor.  Thereafter, the Defendant asked the Plaintiff,

4  "Are you having a bad day?"  The Defendant further stated that he'd got a call

5  stating that the Plaintiff was running in the street when the Plaintiff had broken

6  no laws, when the Plaintiff sees people running and bicycling on South Perry Street

7  on a regular basis, and when the Plaintiff was in a proximity where there was no

8  crime.

9       12.  The twelveth most recent incident of harassment is Sunday morning, at

10  8:15a.m., August 5, 2001 when the Defendant approached the intersection of Grove

11  and South Perry Streets, passed the Plaintiff where the Plaintiff resides, San Souci

12  Apartments, 547 South Perry Street across the street from the law offices of

13  Holloway, Elliott, and Moxley, LLC, 566 South Perry Street, circled the block,

14  approached the Plaintiff in front of San Souci Apartments, 547 South Perry Street

15  and stopped the Plaintiff for no reason, searched the Plaintiff for no reason, and

16  intentionally and unnecessarily detained the Plaintiff without probable cause

17  therefor.  Thereafter, the Defendant forced the Plaintiff to place his hands on the

18  police car.  The Defendant proceeded to interrogate the Plaintiff, and forced the

19  Plaintiff to sit down on the police car.  When the Defendant asked the Plaintiff

20  what was he doing, the Plaintiff replied, "I'm walking the public streets."  The

21  Defendant responded, "Is this a law lecture?"  "Is this a lecture in law?"  "Are

22  you a lawyer?"  "Are you a police officer?"  "Do you know more about law than I do?"

23  When the Defendant asked the Plaintiff does have aids, the Plaintiff replied, "No,

24  I don't have aids."  The Defendant responded, "Don't lieto me.  Don't lie to me."

25  "You're lying to me."  The Defendant stated that if he catches the Plaintiff with

26  his pants rolled up at the feet and his pants' strap unfastened he's going to run

27  the Plaintiff in when the Plaintiff had broken no laws, and when the Plaintiff was

28  in a proximity where there was no crime.

1    The Defendant further stated, "I'm gonna take you to jail, anyway, if I find out

2    you're lying to me."  "I'm gonna come back, and I'm gonna take you to jail, if I

3    find out you're lying to me."  The Plaintiff replied, "About what?"  The Defendant

4    responded, "You know what."  "Now, you go on about your business."

5          13.  The thirteenth most recent incident of harassment is Thursday morning,

6    at 9:45a.m., August 2, 2001 when the Defendant patroling on Grove Street less than

7    ½ block from San Souci Apartments, 547 South Perry Street approached the Plaintiff

8    between Regions Mortgage, Inc., 605 South Perry Street and Regions Mortgage, Inc.,

9    555 South Perry Street and stopped the Plaintiff without reasonable justification

10   therefor, and intentionally and unnecessarily detained the Plaintiff without

11   reasonable justification therefor.  Thereafter, the Defendant stated that he'd got

12   a call stating that the Plaintiff was jumping out in front of cars when the

13   Plaintiff had broken no laws, and when the Plaintiff was in a proximity where there

14   was no crime.  The Defendant further stated, "If I see you do it, I'm gonna take

15   you to jail."  "You hear me?"

16         14.  The fourteenth most recent incident of harassment is  Monday night, at

17   8:30p.m., June 27, 2001 when the Defendant approached the intersection of Grove and

18   South Perry Streets across the street from the Jim Inscoe Agency, Inc., 572 South

19   Perry Street, saw the Plaintiff cross South Perry Street, approached the Plaintiff

20   in front of Regions Mortgage, Inc., 555 South Perry Street and stopped the Plaintiff

21   for no reason, searched the Plaintiff for no reason, and intentionally and

22   unnecessarily detained the Plaintiff without probable cause therefor.  Thereafter,

23   the Defendant proceeded to interrogate the Plaintiff, and forced the Plaintiff to

24   place his hands on the police car.  When the Defendant asked the Plaintiff does he

25   he have any ID, the Plaintiff replied, "I don't have ID on me, my license's in the

26   house."  When the Defendant asked the Plaintiff where does he live, the Plaintiff

27   replied, "Up the street."  When the Defendant asked the Plaintiff where, the

28   Plaintiff replied, "There, in those apartments."

1   When the Defendant asked the Plaintiff was he trying to break into that building, the   1

2   Plaintiff replied, "No. Did someone break into the building?" When the Defendant   2

3   asked the Plaintiff has he ever been arrested, the Plaintiff replied, "The last time   3

4   I was arrested was May 10, 1999." The Defendant further stated that, since it was   4

5   8:30 in the night and since the businesses were closed, the Plaintiff looked   5

6   suspicious when the Plaintiff had broken no laws, and when the Plaintiff was in a   6

7   proximity where there was no crime. Eventually, the Defendant stated, "Go to your   7

8   apartment, and stay away from these businesses."   8

9      15. In reference to landlord tenant law, the Plaintiff has consulted with   9

10   J. M. Harrison Agency, Inc., 213 South Court Street regarding unidentified,   10

11   suspicious, non-tenant, black males and females inhabiting apartments on the second   11

12   floor of San Souci Apartments, 547 South Perry Street on a daily basis. Assistant   12

13   manager Faye Brooks of J. M. Harrison Agency, Inc. informed the Plaintiff that merely   13

14   1 adult faggot leases apartment 13, and more than 1 adult faggot inhabits apartment   14

15   13, and merely 2 adults lease apartment 7, and more than 2 adults inhabit apartment 7.   15

16   Assistant manager Diana Csusey of J. M. Harrison Agency, Inc. informed the Plaintiff   16

17   that merely 1 adult leases apartment 8, and more than 1 adult inhabits apartment 8.   17

18   J. M. Harrison Agency, Inc. evicted an adult black male and an adult white female   18

19   from apartment 20, third floor, in August of 2000 because of the black'male's prior   19

20   encounter with Stower's Real Estate management in 1999 and on account of eight to ten   20

21   suspicious, non-tenant, teenaged black males and females and 1 adult black female   21

22   meddling the Plaintiff and caught coming out of apartment 20 very noisy and making   22

23   improper gestures and improper suggestive remarks to assistant manager Faye Brooks on   23

24   the premises of San Souci Apartments. Said adult black male has continued to enter   24

25   San Souci Apartments and is now going into apartment 12. When the Plaintiff exits   25

26   apartment 10, or another tenant exits an apartment on the second floor, a non-tenant,   26

27   adult faggot will simultaneously exit apartment 13 and stand up in the corridors in   27

28   front of apartment 10 when he thinks the Plaintiff, or another person, has exited an   28

1   apartment and is now outside in the corridors.  That same faggot touched and hugged

2   the Plaintiff without consent at San Souci Apartments, 547 South Perry Street,

3   called the Plaintiff by another name, and told the Plaintiff the Plaintiff looks

4   like his friend from New York that was in the war with him.  Another non-tenant,

5   adult faggot that hangs out on the second floor in apartment 13 approached 547 South

6   Perry Streetfrom the private of Hilton Mortgage, Inc., 540 South Perry Street,

7   entered the San Souci Apartments driveway, bypassed the Plaintiff in close quarters

8   on the second floor, stopped at apartment 13 and made his sexually explicit remarks

9   to the Plaintiff before going into apartment 13.  Another suspicious, adult black

10  the Plaintiff witnesses exiting the premises of San Souci Apartments and entering the

11  premises of Regions Mortgage, Inc. trespassing the premises touched and hugged the

12  Plaintiff without consent, and exposed himself to the Plaintiff 4 yards from

13  apartment 10, Plaintiff's apartment.  A suspicious, non-tenant, adult black male,

14  accompanied by another black male and an adult tenant from apartment 7 pointed at the

15  Plaintiff and threatened the Plaintiff inside a green pick-up truck in the private

16  lot of Hilton Mortgage, Inc., 540 South Perry Street.  Thereafter, said black male

17  entered the driveway of San Souci Apartments in the truck and entered apartment 7.

18  Another suspicious, non-tenant, adult black male that is trespassing the private lot

19  of Hilton Mortgage, Inc. across the street went to the door of apartment 7 and didn't

20  go inside the apartment.  Next, said black male loitering in the corridors stared at

21  the Plaintiff, went down a flight of stairs for no purpose when he saw the plaintiff

22  go down a flight of stairs, went back up the flight of stairs for no purpose when he

23  saw the Plaintiff come back up the flight of stairs, advanced across the second floor

24  for no purpose getting into the Plaintiff's face for no purpose, going up a second

25  flight of stairs for no purpose then coming back down, backtracked across the second

26  floor for no purpose getting back into the Plaintiff's face for no purpose, and

27  trespassed again the private lot of Hilton Mortgage, Inc. across the street.

28

1   Another suspicious, non-tenant, adult, black male that hangs out on the second

2   floor in apartment 8 entered the driveway of San Souci Apartments in a blue Dodge,

3   saw the Plaintiff in the driveway, accelerated and sped up to the Plaintiff and

4   screamed obscenities at the Plaintiff, cursing the Plaintiff, before going into

5   apartment 8.  Said black male is often seen directly in front of the Apartment 10,

6   where the Plaintiff resides, advancing across the second floor less than 1 foot

7   from the Plaintiff's apartment door, and trespassing Regions Mortgage's private lot.

8        16.  Regions Mortgage, Inc. in District 26 is distributed from the

9   intersection of Grove and South Court Streets, to the intersection of Grove and

10  South Perry Streets, to the intersection of Grove and South Lawrence Streets.  More

11  than seventy five percent of motorists and pedestrians approaching from South Court

12  Street and South McDonough Street and found in the above section of Grove Street

13  do not work for Regions Mortgage, Inc.  More than seventy five percent of motorists

14  and pedestrians approaching from South Court Street and South McDonough Street and

15  found in the above section of Grove Street do not work for Regions Bank.  More than

16  seventy five per cent of motorists and pedestrians approaching from South Court

17  Street and South McDonough Street and found in the above section of Grove Street

18  do not work for any business in this section of Grove Street, and do not work for

19  any business in this proximity of Grove Street at all.  More than seventy five of

20  motorists and pedestrians approaching from South Court Street and South McDonough

21  Street who are found in the above section of Grove Street are African-american black

22  folks.  More than seventy five percent of motorists and pedestrians approaching

23  from South Court Street and South McDonough Street and found in the above section of

24  Grove Street do not live in any houses in this section of Grove Street.  And more

25  than seventy five per cent of motorists and pedestrians approaching from South

26  Court Street and South McDonough Street who are found in the above section of Grove

27  Street have no business in this section of Grove Street at all.

28

1    17.  IN CONSIDERATION WHEREOF, the Plaintiff, therefore, respectfully request:

2    the Court to discontinue all traffic on Grove Street from South Court to South

3    Lawrence Streets, mandate that the Defendant finance immediate reconstructing and

4    resurfacing efforts for Grove Street, and restrict the new premises to the exclusive

5    rights of Regions Mortgage, Inc., as private property of Regions Mortgage, Inc.

6    18.  On the suburban streets of Montgomery, the Plaintiff witnesses former

7    taxicab drivers who had driven taxicabs in Montgomery in the past, who are African-

8    american black males, who hang around downtown all day, who perhaps do not possess

9    a current chauffer's license, and who are now chauffering passengers on the Streets

10   of Montgomery including 547 South Perry Street in unmarked cars that do not belong

11   to legitimate, licensed taxicabs companies in Montgomery.

12   19.  A non-tenant, dead spirited, evil, elderly woman entered apartment 10,

13   547 South Perry Street at approximately 3:00p.m. on or about April 17, 2002 when the

14   Plaintiff was undressed, when the plaintiff had no knowledge of and had given no

15   permission to, and when the Plaintiff was expecting no persons going to apartment

16   10, 547 South Perry Street.  The Plaintiff seeks an injunction directing said

17   elderly woman to keep 1000 feet from the 547 South Perry Street premises.

18   20.  In reference to administrative law, the Defendant, City of Montgomery

19   has escorted continuously suspicious, non-resident, harassing hearses in a

20   procession of suspicious, non-resident, African-american black folks less than two

21   feet from the premises of Colonial Bank, 671 South Perry Street, Regions Mortgage,

22   Inc., 605 South Perry Street, Regions Mortgage, Inc., 555 South Perry Street, San

23   Souci Apartments,547 South Perry Street, law offices of William R. Blanchard, Andrew

24   M. Skier, Gary L. Stephens, and Boyd F. Campbell, 505 South Perry Street, etc.,

25   directly in the Plaintiff's face.

26   21.  The Plaintiff has suffered mental anguish, worry, insult, cannot sleep,

27   libel and slander, false imprisonment, subject of ridicule, and do not feel safe

28   in Montgomery for fear of the Defendant, City of Montgomery, Bobby Bright.

22.  Suspicious, non-tenant, non-employee, African- american black folks walk into the private lot of San Souci Apartments, 547 South Perry Street and drive vehicles into the private lot of San Souci Apartments, operate equipment inside the laundry room facility, destroy private property in the laundry room, and scream obsenities at the Plaintiff, and break into tenant-owned automobiles.  Suspicious, non-tenant, non-employee, African-american black folks walk into the private lot of Regions Mortgage, Inc., 555 South Perry Street and drive vehicles into the private lot of Regions Mortgage, Inc., disrupt private property in the break areas, and park overnight in the "reserved" parking spaces on Regions Mortgage, Inc.'s private property.  Suspicious, non-tenant, non-employee, African-american black folks have approached the proximity of Regions Mortgage, Inc. and San Souci Apartments straight from no place screaming obscenities at the Plaintiff.  The Defendant, City of Montgomery, Bobby Bright stopped, searched, and detained the Plaintiff in that exact same location on the public streets without probable cause.

23. The most recent incident of harassment is Friday afternoon, at 5:15p.m., October 4, 2002 when the Defendant approached the intersection of Arba and South Lawrence Streets at the I 85 interstate overpass across the street from the Department of Finance, Risk Management, 777 South Lawrence Street, approached the Plaintiff standing outside upon the sidewalk on the streets and stopped the Plaintiff without reasonable justification therefor, and intentionally and unnecessarily detained the Plaintiff without reasonable justification therefor.  Thereafter, the Defendant stated, "Is everything alright?"  "Is everything alright?"  The Plaintiff replied, "Yeah, everything alright."  The Defendant responded, "We got a call saying you was jumping out in front of cars."  The Plaintiff replied, "Someone called you before and said I was jumping out in front of cars."  The Defendant responded, "You're not doing that, are you?"

1    24.  WHEREFORE, the Plaintiff, Bill Lietzke, claims $200,000.00 in personal

2  injuries for mental anguish, and $200,000.00 for the racial discrimination rendered

3  against the Plaintiff.  The Plaintiff claims the absolute, total $20,400,000.00

4  in punitive damages. ~~Punitive damages to be determined by a fact finder in the~~

5  ~~Superior Court of the State of California.~~

6

7  DATED  8th day of October, 2002.

*Bill L. Lietzke*
*547 South Perry Street Apt 10*
*Montgomery Alabama 36104*

Exhibit B

JEFFERSON COUNTY CIRCUIT COURT
TENTH JUDICIAL CIRCUIT

BILL LIETZKE,                        )

                    PLAINTIFF,       )

VS.                                  )    CASE NUMBER    **CV03  2771 CPP**

CITY OF MONTGOMERY,                  )                  FILED IN OFFICE

                    DEFENDANTS.      )                  MAY 0 5 2003

                COMPLAINT FOR HARASSMENT    ANNE-MARIE ADAMS
                                                   Clerk

COUNT I

1.  On or about January 15, 2003, Defendants in Montgomery unlawfully
harassed Plaintiff under the following conditions:

While on patrol, Defendants alleged "On the sidewalk" to
Plaintiff while Plaintiff was merely jogging along the curb on Grove
Street near Plaintiff's home between Regions Mortgage, Inc., 605 South
Perry Street and Regions Mortgage, Inc., 555 South Perry Street.

2.  Plaintiff was not obstructing traffic on Grove Street while
he was jogging, and Defendants had no probable cause to unlawfully detain
Plaintiff.

3.  Plaintiff deposes and says that he is a citizen of Montgomery,
Alabama resideng at 547 South Perry Street, Apt.  10.

4.  Plaintiff deposes and says that he has been harassed
continuously by the Montgomery Police, Defendants in Montgomery at or near
his residence since 1997, from June 9, 1997 to April 18, 2003.

5.  Plaintiff is sueing Defendants for mental anguish for this
negligent and wanton act that was discovered when Plaintiff suffered
damages resulting from Defendants' discriminatory practice.

(page 1)

COUNT II

6.  On or about April 18, 2003, Defendants in Montgomery unlawfully harassed Plaintiff under the following conditions:

While on patrol, Defendants entered the premises of 547 South Perry Street where the Plaintiff resides approached Plaintiff and stated a member of the Montgomery police stated that Plaintiff asked him for a "sticker" of some kind while Plaintiff was downtown.  Plaintiff replied to Defendants that he didn't recall making such a request of the officer, but that if Plaintiff sees the officer he'll ask him for the sticker.

7.  Plaintiff was not breaking any laws when Defendants arrived at 547 South Perry Street, and Defendants had no probable cause to unlawfully detain Plaintiff.

8.  Plaintiff deposes and says that he is a citizen of Montgomery, Alabama residing at 547 South Perry Street, Apt.  10.

9.  Plaintiff deposes and says that he has been harassed continuously by the Montgomery police, Defendants in MOntgomery at or near his residence since 1997, from June 9, 1997 to April 18, 2003.

10.  Plaintiff is suing Defendants for mental anguish for this negligent and wanton act that was discovered when Plaintiff suffered damages resulting from Defendants' discriminatory practice.

WHEREFORE, Plaintiff is demanding that a judgment is entered against Defendants for the following:

(A) Punitive damages of `40,000.00

(B) Actual damages of `20,000.00

(C) Compensatory damages of `40,000.00

RESPECTFULLY SUBMITTED this 1st day of May, 2003.

547 South Perry Street, Apt.  10
Montgomery, Alabama  36104

(page 2)

Do not serve upon the Defendants

*per plaintiff*

This is for the Court's information.  Do not serve.

1.  The most recent incident of harassment is Tuesday afternoon, at 12:00p.m., September 17, 2002 when the Defendant patroling on South Lawrence Street in front of Yvette Smiley Smith, C. P. A., Utility Regulatory Consulting, 575 South Lawrence Street approached the Plaintiff directly behind Regions Mortgage, Inc., 555 South Perry Street, less than ½ block from San Souci Apartments, 547 South Perry Street and stopped the Plaintiff for no reason, and intentionally and unnecessarily detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant stated to the Plaintiff, standing outside upon the sidewalk on the streets, "Is that your car The Plaintiff replied, "No.  I see where it was wrecked.  Did somebody hit it?"  The Defendant responded, "I don't know."  The Plaintiff replied, "It's not my car, and I don't know whose car it belongs to."  The Defendant responded, "Do you work around here?"  The Plaintiff replied, "No."  The Defendant responded, "What's your name?"  The Plaintiff replied, "Bill."  The Defendant responded, "Bill what?"  The Plaintiff replied, "Bill Lietzke."  The Defendant responded, "What you doing?"  The Plaintiff replied, "Nothing."  The Defendant responded, "Just standing there?"  The Plaintiff replied, "Just standing here."  The Defendant responded, "You got some ID?"  The Plaintiff replied, "I got some ID in the house."  The Defendant responded, "You live around here?"  The Plaintiff replied, "On that block in those apartments."  The Defendant responded, "Right over yonder?"  The Plaintiff replied, "Right over yonder."

2.  The second most recent incident of harassment is Wednesday morning, at 11:15a.m., August 28, 2002 when the defendant patroling on South Street approached the intersection of South Lawrence and South Streets, saw the Plaintiff cross the street on the interstate overpass across the street from the MGM Travel, 669 South Lawrence Street, 1½ blocks from San Souci Apartments, 547 South Perry Street, approached the Plaintiff on the overpass ans stopped the Plaintiff without reasonable justification therefor, and intentionally and unnecessarily detained the Plaintiff without reasonable justification therefor.

1  Thereafter, the Defendant stated that someone called them stating that the Plaintiff

2  is climbing over the fence when the Plaintiff had broken no laws, and when the

3  Plaintiff was in a proximity where there was no crime.  The Plaintiff replied,

4  "Somebody called you three years ago and said I fixing to jump off the bridge."  The

5  Defendant responded, "You weren't going to do that, were you?"  The Plaintiff

6  replied, "No.  I'm alright."

7       3.  The third most recent incident of harassment is Tuesday afternoon, at

8  2:00p.m., July 16, 2002 when the Defendant patroling on Madison Avenue across the

9  street from the Madison Hotel, 120 Madison Avenue approached the intersection of

10  South Lawrence and Madison Streets, approached the Plaintiff standing outside upon

11  the sidewalk and stopped the Plaintiff for no reason, and intentionally and

12  unnecessarily detained the Plaintiff without probable cause therefor.  Thereafter,

13  the Defendant stated, "You need some help?"  The Plaintiff replied, "No."  The

14  Defendant responded, "I thought you were waving at me."  The Plaintiff replied, "If

15  I need some help, I'll let you know."

16       4.  The fourth most recent incident of harassment  is Thursday night, at 8:15

17  p.m., June 20, 2002 when the Defendant patroling on South Lawrence Street across the

18  street from the law offices of Esco & Benson, LLC, Bruce B. Stone, P. C., David G.

19  Flack, and Gene Spencer, 547 South Lawrence Street approached the Plaintiff standing

20  outside upon the sidewalk on the streets at The Center for Families, 530 South

21  Lawrence Street and San Souci Apartments, 547 South Perry Street and stopped the

22  Plaintiff for no reason, and intentionally and unnecessarily detained the Plaintiff

23  without probable cause therefor.  Thereafter, the Defendant stated to the Plaintiff,

24  "How's it going, what are you doing, where 'bout you live, now, why you hangin'

25  around here" when the Plaintiff had broken no laws, and when the Plaintiff was in a

26  proximity where there was no crime.  When the Defendant proceeded towards the

27  entrance of The Center for Families and a suspicious black woman approached the area,

28  the Plaintiff pointed out to the Defendant the woman is trespassing both premises.

1        5.  The fifth most recent incident of harassment is Tuesday morning, at 9:45

2    a.m., April 16, 2002 when the Defendant approached the intersection of South Union

3    and South Streets ½ mile southeast of downtown Montgomery, saw the Plaintiff cross

4    South Union Street, an exit ramp off Interstate 85, passed the Plaintiff walking on

5    South Street, circled the block, approached the Plaintiff in front of Jim Massey's,

6    531 South Street and stopped the Plaintiff for no reason, searched the Plaintiff

7    for no reason, and intentionally and unnecessarily detained the Plaintiff without

8    probable cause therefor.  Thereafter, the Defendant forced the Plaintiff to put his

9    grocery bags down, and forced the Plaintiff to place his hands on the police car

10    inside the parking lot of Jim Massey's, somewhere the Plaintiff doesn't go.  The

11    Defendant proceeded to interrogate the Plaintiff.  The Defendant stated there was a

12    capais warrant out on the Plaintiff for the Plaintiff's arrest.  When the Plaintiff

13    replied he didn't believe that, the Defendant responded, "You don't have to believe

14    it, it's there.  I can take you to jail just to prove . . "  "I don't want to take

15    you to jail on just 1 capais warrant."  The Defendant inquired if the Plaintiff

16    knew why there was a warrant on him.  The Plaintiff replied that he was arrested in

17    1999 for just crossing a public street known as the Mobile Highway, 3 miles

18    southwest of downtown Montgomery, and posted bail bond of $100.00.  A hearing was

19    set 1 month later, and the Plaintiff refused to appear at the hearing.

20        6.  The sixth most recent incident of harassment is Thursday afternoon, at

21    4:30p.m., December 27, 2001 when the Defendant patroling on South Lawrence Street

22    passed the Plaintiff in the parking lot of San Souci Apartments, across the street

23    from the law offices of Esco & Benson, LLC, Bruce B. Stone, P. C., David G. Flack,

24    and Gene Spencer, 547 South Lawrence Street, circled the block, entered the parking

25    lot of Regions Mortgage, Inc., 555 South Perry Street, next door to San Souci

26    Apartments, 547 South Perry Street, proceeded to the South Lawrence Street exit and

27    stopped the Plaintiff for no reason, and intentionally and unnecessarily detained

28    the Plaintiff and filmed the Plaintiff without probable cause therefor.

1    Thereafter, the Defendant used a video camera to film the Plaintiff without consent
2    when the Plaintiff had broken no laws, and when the Plaintiff was in a proximity
3    where there was no crime.  The Defendant asked the Plaintiff if the Plaintiff needs
4    some help.

5         7.  The seventh most recent incident of harassment is Monday morning, at
6    8:45a.m., December 24, 2001 when the Defendant exit the law offices of Shinbaum,
7    Abell, Mcleod, and Vann, P. C., 566 South Perry Street across the street from
8    Regions Mortgage, Inc., 555 South Perry Street and San Souci Apartments, 547 South
9    Perry Street, approached the Plaintiff standing outside upon the sidewalk on the
10   streets at the law offices of Holloway, Elliott, and Moxley, LLP, 556 South Perry
11   Street and stopped the Plaintiff for no reason, and intentionally and unnecessarily
12   detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant
13   stated, "How's it going, are you waiting for someone, what are you doing here, do
14   you live around here?"  The Defendant accused the Plaintiff of "staring at the
15   building."  The Defendant further stated, "You look suspicious.  Maybe you shouldn't
16   hang around here"  when the Plaintiff had broken no laws,  and when the Plaintiff
17   was in a proximity where there was no crime.

18        8.  The eighth most recent incident of harassment is Monday afternoon, at
19   1:00p.m., December 10, 2001 when the Defendant patroling on Montgomery Street ½
20   block from the U. S. Post Office, downtown station, 135 Catoma Street approached the
21   Plaintiff in front of the Davis Theatre for the Performing Arts, 251 Montgomery
22   Street and stopped the Plaintiff for no reason, and intentionally and unnecessarily
23   detained the Plaintiff without probable cause therefor.  Thereafter, the Defendant
24   inquired if the Plaintiff knows Jeff, last name unknown.  When the Plaintiff asked
25   the Defendant what was the situation, the Defendant responded that he'd got a call
26   stating that Jeff, last name unknown, was somewhere downtown drunk and intoxicated
27   when the Plaintiff had broken no laws, and when the Plaintiff was in a proximity
28   where there was no crime.

1    9.  The nineth most recent incident of harassment is Wednesday morning, at

2    9:45p.m., November 28, 2001 when the Defendant patroling on South Lawrence Street

3    ½ block from the Amsouth Bank, 201 Monroe Street approached the Plaintiff walking

4    on the sidewalk and stopped the Plaintiff without reasonable justification therefor,

5    and intentionally and unnecessarily detained the Plaintiff without reasonable

6    justification therefor.  Thereafter, the Defendant exclaimed from the vehicle, "Get

7    somewhere."  The Plaintiff replied, "What?"  The Defendant responded, "You heard me,

8    get somewhere" when the Plaintiff had broken no laws, and when the Plaintiff was in

9    a proximity where there was no crime.  When the Plaintiff asked the Defendant why,

10   the Defendant responded that he'd got a call stating that the Plaintiff was begging

11   for money.  When the Plaintiff denied allegations of begging for money, the

12   Defendant maintained, "Get somewhere."

13   10.  The tenth most recent incident of harassment is Thursday afternoon, at

14   2:00p.m., September 13, 2001 when the Defendant patroling on North Perry Street saw

15   the Plaintiff cross North Perry Street in front of Mama's Sack Lunches, 21 North

16   Perry Street and stopped the Plaintiff for no reason, and intentionally and

17   unnecessarily detained the Plaintiff without probable cause therefor.  Thereafter,

18   the Defendant stated, "Walk on the sidewalk, not in the street" when the Plaintiff

19   crossed North Perry Street without obstructing traffic.  In the recent past, the

20   the Defendant has ordered the Plaintiff not to go on the sidewalks at the Alabama

21   Power Company and the City Hall, and the Defendant has ordered the Plaintiff not to

22   go on Second Street, although Second Street is a public street.  The Defendant

23   further stated that the Defendant is going to take the Plaintiff to jail if he goes

24   back on the sidewalks.

25   11.  The eleventh most recent incident of harassment is Sunday morning, at

26   9:30a.m., September 2, 2001 when the Defendant patroling on South Perry Street

27   across the street from the First Baptist Church, 305 South Perry Street approached

28   the Plaintiff in front of Harbin's Stern Bros. Office Furniture and Supplies,

1   300 South Perry Street and stopped the Plaintiff without reasonable justification

2   therefor, and intentionally and unnecessarily detained the Plaintiff without

3   reasonable justification therefor.  Thereafter, the Defendant asked the Plaintiff,

4   "Are you having a bad day?"  The Defendant further stated that he'd got a call

5   stating that the Plaintiff was running in the street when the Plaintiff had broken

6   no laws, when the Plaintiff sees people running and bicycling on South Perry Street

7   on a regular basis, and when the Plaintiff was in a proximity where there was no

8   crime.

9       12.  The twelveth most recent incident of harassment is Sunday morning, at

10  8:15a.m., August 5, 2001 when the Defendant approached the intersection of Grove

11  and South Perry Streets, passed the Plaintiff where the Plaintiff resides, San Souci

12  Apartments, 547 South Perry Street across the street from the law offices of

13  Holloway, Elliott, and Moxley, LLC, 566 South Perry Street, circled the block,

14  approached the Plaintiff in front of San Souci Apartments, 547 South Perry Street

15  and stopped the Plaintiff for no reason, searched the Plaintiff for no reason, and

16  intentionally and unnecessarily detained the Plaintiff without probable cause

17  therefor.  Thereafter, the Defendant forced the Plaintiff to place his hands on the

18  police car.  The Defendant proceeded to interrogate the Plaintiff, and forced the

19  Plaintiff to sit down on the police car.  When the Defendant asked the Plaintiff

20  what was he doing, the Plaintiff replied, "I'm walking the public streets."  The

21  Defendant responded, "Is this a law lecture?"  "Is this a lecture in law?"  "Are

22  you a lawyer?"  "Are you a police officer?"  "Do you know more about law than I do?"

23  When the Defendant asked the Plaintiff does have aids, the Plaintiff replied, "No,

24  I don't have aids."  The Defendant responded, "Don't lieto me.  Don't lie to me."

25  "You're lying to me."  The Defendant stated that if he catches the Plaintiff with

26  his pants rolled up at the feet and his pants' strap unfastened he's going to run

27  the Plaintiff in when the Plaintiff had broken no laws, and when the Plaintiff was

28  in a proximity where there was no crime.

1    The Defendant further stated, "I'm gonna take you to jail, anyway, if I find out
2    you're lying to me." "I'm gonna come back, and I'm gonna take you to jail, if I
3    find out you're lying to me." The Plaintiff replied, "About what?" The Defendant
4    responded, "You know what." "Now, you go on about your business."

5        13.    The thirteenth most recent incident of harassment is Thursday morning,
6    at 9:45a.m., August 2, 2001 when the Defendant patroling on Grove Street less than
7    ½ block from San Souci Apartments, 547 South Perry Street approached the Plaintiff
8    between Regions Mortgage, Inc., 605 South Perry Street and Regions Mortgage, Inc.,
9    555 South Perry Street and stopped the Plaintiff without reasonable justification
10    therefor, and intentionally and unnecessarily detained the Plaintiff without
11    reasonable justification therefor. Thereafter, the Defendant stated that he'd got
12    a call stating that the Plaintiff was jumping out in front of cars when the
13    Plaintiff had broken no laws, and when the Plaintiff was in a proximity where there
14    was no crime. The Defendant further stated, "If I see you do it, I'm gonna take
15    you to jail." "You hear me?"

16        14.    The fourteenth most recent incident of harassment is Monday night, at
17    8:30p.m., June 27, 2001 when the Defendant approached the intersection of Grove and
18    South Perry Streets across the street from the Jim Inscoe Agency, Inc., 572 South
19    Perry Street, saw the Plaintiff cross South Perry Street, approached the Plaintiff
20    in front of Regions Mortgage, Inc., 555 South Perry Street and stopped the Plaintiff
21    for no reason, searched the Plaintiff for no reason, and intentionally and
22    unnecessarily detained the Plaintiff without probable cause therefor. Thereafter,
23    the Defendant proceeded to interrogate the Plaintiff, and forced the Plaintiff to
24    place his hands on the police car. When the Defendant asked the Plaintiff does he
25    he have any ID, the Plaintiff replied, "I don't have ID on me, my license's in the
26    house." When the Defendant asked the Plaintiff where does he live, the Plaintiff
27    replied, "Up the street." When the Defendant asked the Plaintiff where, the
28    Plaintiff replied, "There, in those apartments."

1    24.  WHEREFORE, the Plaintiff, Bill Lietzke, claims $200,000.00 in personal

2    injuries for mental anguish, and $200,000.00 for the racial discrimination rendered

3    against the Plaintiff.  The Plaintiff claims the absolute, total $20,400,000.00

4    in punitive damages. Punitive damages to be determined by a fact finder in the

5    Superior Court of the State of California.

6

7    DATED  8th day of October, 2002.

*Bill L. Lietzke*
547 South Perry Street Apt 10
Montgomery Alabama 36104

Exhibit C

FILED

RECEIVED

MAY 30 ⁓⁓

2003 MAY 30 P 1: 09

BILL LIETZKE,

U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT
MIDDLE DIVISION
MONTGOMERY, ALABAMA

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

BILL LIETZKE,                    )

PLAINTIFF,    )

)    CASE NUMBER  03 -F-584 -N

VS.

CITY OF MONTGOMERY,              )

DEFENDANTS.  )

COMPLAINT FOR HARASSMENT

COUNT I

1.  On or about January 15, 2003, while on patrol, Defendants ordered Plaintiff to get on the sidewalk while Plaintiff was merely jogging along the curb on Grove Street near Plaintiff's home between Regions Mortgage, Inc., 605 South Perry Street and Regions Mortgage, Inc., 555 South Perry Street.

2.  Plaintiff was not obstructing traffic on Grove Street while jogging, and Defendants had no probable cause to unlawfully detain Plaintiff.

3.  Plaintiff deposes and says that he has been harassed continuously by the Montgomery police, Defendants herein at or near his residence since 1997, from June 9, 1997 to April 18, 2003.

4.  Defendants have violated the Plaintiff's civil rights as guaranteed by the United States Constitution.

5.  Acting under color of state law the Defendants have unlawfully and in direct violation of Plaintiff's civil rights detained the Plaintiff on numerous occasions.

(1)

## COUNT II

6.   On or about April 18, 2003, while on patrol, Defendants entered the premises of 547 South Perry Street where Plaintiff resides, approached Plaintiff and stated a member of the Montgomery police stated that Plaintiff asked him for a "sticker" of some kind while Plaintiff was downtown.  Plaintiff replied to Defendants that he didn't recall making such a request of the officer, but that if Plaintiff wees the officer he'll ask him for the sticker.

7.   Plaintiff was not breaking any laws when Defendants arrived at 547 South Perry Street, and Defendants had no probable cause to unlawfully detain Plaintiff.

8.   Plaintiff deposes and says that he has been haressed continuously by the Montgomery police, Defendants herein at or near his residence since 1997, from June 9, 1997 to April 18, 2003.

9.   Defendants have violated the Plaintiff's civil rights as guaranteed by the United States Constitution.

10.   Acting under color of state law the Defendants have unlawfully and in direct violation of Plaintiff's civil rights detained the Plaintiff on numerous occasions.

WHEREFORE, Plaintiff is demanding that a judgment is entered against Defendants for the following:

(A) Punitive damages of  40,000.00

(B) Actual damages of  20,000.00

(C) Compensatory damages of  40,000.00

(D) Costs of suit herein

547 South Perry Street
Montgomery, Alabama 36104
(334) 834 8602

(2)

Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BILL LIETZKE                                  *                    FILED
                                                              U.S. DISTRICT COURT
547 SOUTH PERRY STREET                                        DISTRICT OF MARYLAND

APARTMENT 10                                  *               2007 APR -5  A 10:05

MONTGOMERY, ALABAMA   36104                                   CLERK'S OFFICE
*(Full name and address of the plaintiff)*                    BY_____ DEPUTY
           **Plaintiff(s)**                   *
                                                   Civil No.: _____WDQ 07 CV 0872
           vs.                                     *(Leave blank.  To be filled in by Court.)*

BOBBY BRIGHT                      ART BAYLOR                   2:07-CV-324-WHA

103 NORTH PERRY STREET            320 NORTH RIPLEY STREET

MONTGOMERY, ALABAMA               MONTGOMERY, ALABAMA


*(Full name and address of the defendant(s))*
           **Defendant(s)**                   ********


## COMPLAINT

1.    Jurisdiction in this case is based on:

         ☐    Diversity (none of the defendants are residents of the state where plaintiff
              is a resident)

         ☒    Federal question (suit is based upon a federal statute or provision of the
              United States Constitution)

         ☐    Other (explain) _____

              _____

              _____

              _____

U.S. District Court (Rev. 12/2000)                    I

2.    The facts of this case are: 1.    On October 23, 2005, by and through its agent police officers, City of Montgomery Defendants procured the false imprisonment of the Plaintiff Bill Lietzke on the false charge that the Plaintiff was flagging down cars, walking in the middle of the street, trying to get cars to stop, etc.

2.    All allegations as such City of Montgomery Defendants supplied to the Montgomery Municipal Court were catergorically denied by the Plaintiff, and the Plaintiff entered the plea of NOT GUILTY.

3.    Said actions by City of montgomery Defendants are indicutive of another case of false imprisonment where the Plaintiff was faslely arrested on another public street by City of Montgomery Defendants on May 10, 1999 and charged with flagging down cars and try to get cars to stop.  The Plaintiff also pleaded NOT GUILTY in that case.

4.    City of Montgomery Defendants confined the Plaintiff intentionally without lawful privilege and against the Plaintiff's consent within a limited area for any appreciable time.

5.    City of Montgomery Defendants took, held, detained, and arrested the Plaintiff and carried the Plaintiff into another part of the same county and are therefore guilty of first degree kidnapping.

6.    City of Montgomery Defendants, with the intent to harass, struck, shoved, kicked, or otherwise touched the Plaintiff and subjected the Plaintiff to RECORD NUMBER unlawful searches and seizures and RECORD NUMBER unlawful physical contacts.

7.  City of Montgomery Defendants detained the Plaintiff unlawfully and intentionally and without authority of law.

8.  City of Montgomery Defendants are therefore of first degree kidnapping if the Plaintiff was intentionally and unlawfully confined.

9.  On July 13, 2004, by and through its agent police officers, City of montgomery Defendants backed up in white Ford moments after passing the Plaintiff, jumped out of the Taurus and pointed loaded pistols directly at the Plaintiff for absolutely nothing in front of 547 South Perry Street.  City of Montgomery Defendants continued to taunt, bully, and terrorize the Plaintiff screaming, "Get on your knees, put your hands behind your head, I'll shoot you."  City of Montgomery Defendants proceeded to 547 South Perry Street to the Plaintiff's driveway and encountered the Plaintiff's neighborhood upstairs on the third floor.  City of Montgomery stated, "Is he alright?" "Does he live here?"

10.  On January 18, 2005, by and through its agent police officers, City of Montgomery Defendants circled the 500 block in the proximity of 547 South Perry Street, Apt. 10 moments after passing the Plaintiff, returned to 547 South Perry Street, jumped out of the patrol car, crossed South Perry Street following and stalking the Plaintiff, and pointed another dangerous weapon at the Plaintiff.

11.  On January 8, 2007, by and through its agent police officers, City of Montgomery Defendants broke into the Plaintiff's living room door and entered the Plaintiff's residence of 547 South Perry Street, Apt. 10 and pointed pistols again at the Plaintiff and shined their flashlights inside the Plaintiff's residence at 3:10 a.m. past midnight without probable cause therefore.

12.   For absolutely no reason, City of Montgomery Defendants continued to taunt, bully, and terrorize the Plaintiff screaming, "Let me see your hands, Let me see your hands." "Get down on the floor, get down on the floor." City of Montgomery Defendants grabbed the Plaintiff inside his bedroom and forced the Plaintiff's head to hit the floor of the Plaintiff's bedroom.

13.   City of Montgomery Defendants knowingly touched the Plaintiff with the intent to injure, insult, and provoke the Plaintiff, and assaulted the Plaintiff by knowingly, intentionally, and recklessly causing physical injury to the Plaintiff.

14.   City of Montgomery Defendants, by physical action, intentionally placed the Plaintiff in fear of imminent serious physical injury pointing loaded pistols at the Plaintiff.

15.   On December 13, 2006, by and through its agent police officers, sped through the Plaintiff's neighborhood of law firms and mortgage companies in at least seven patrol cars and parked in front of 547 South Perry Street, San Souci Apartments, and 529 South Perry Street, office spaces and leasing properties of the Plaintiff's landlord, The Stowers Management, 1631 East Fairview Avenue.

16.   The Plaintiff entered the law firm of Shinbaum, Abell, Mcleod, and Vann, P. C., 566 South Perry Street across the street from 547 South Perry Street and informed the secretaries of Shinbaum, Abell, Mcleod, and Vann, P. C. that City of Montgomery Defendants are crossing South Perry Street following and stalking the Plaintiff and are now entering these law offices following and stalking the Plaintiff. One of the secretaries known as April witnessed City of Montgomery Defendants enter Shinbaum, Abell, Mcleod, and Vann, P. C. grabbing the Plaintiff by the shoulders and arms and dragging the Plaintiff out of Shinbaum, Abell, Mcleod, Vann, P. C. to their patrol cars parked in front of 547 South Perry Street and 529 South Perry St.

City of Montgomery Defendants continued to taunt, bully, and terrorize the Plaintiff placing handcuffs on the Plaintiff's wrists that injured the Plaintiff and forcing the Plaintiff's head to hit the trunk of their patrol car. City of Montgomery Defendants placed the Plaintiff inside their car and moments later ordered the Plaintiff to get out of the car. City of Montgomery Defendants then removed the handcuffs and stated "There is no charge." "Go on, go on."

17. On January 19, 2007, by and through its agent police officers, City of Montgomery Defendants approached the 500 block of South Perry Street ½ block from 547 South Perry Street and harassed the Plaintiff from the window of the patrol car. City of Montgomery Defendants beckoned the Plaintiff by hand. When the Plaintiff refused, City of Montgomery Defendants then followed and stalked the Plaintiff, grabbed the Plaintiff by the arm, and pulled the Plaintiff to his patrol car. City of Montgomery Defendants handcuffed the Plaintiff for nothing, searched the Plaintiff for nothing, and forced the Plaintiff to lean against his patrol car for nothing. Shortly thereafter, City of Montgomery Defendants removed the handcuffs and released the Plaintiff.

18. On March 4, 2007, by and through its agent police officers, City of Montgomery Defendants approached the 300 block of South Perry Street and harassed the Plaintiff from the window of the patrol car. When the Plaintiff remained silent, City of Montgomery Defendants jumped out of the car, parked in front of First Baptist Church, 305 South Perry Street, and unlawfully detained the Plaintiff. City of Montgomery Defendants stated, "You got somewhere to go?" "You can't be hanging around the church if you ain't going in the church."

3.    The relief I want the court to order is:  Stephanie Mohr TAKEN OUT OF the West Virginia prisons, and the City of Montgomery Defendants THROWN INTO the West Virginia prisons.
☐    Damages in the amount of:    $2,000,000,000.00

☒    An injunction ordering: Intersections of Grove Street Street at South Court Street and Grove Street at South McDonough are shut down for good, blocked off, and closed out permanently, indefinitely, and IMMEDIATELY to the general public expelling Alabama City of Montgomery agent police officers and expelling African american Negroes who are not supposed to be in this area at all, and who have absolutely no business at all in this district.

The Plaintiff wants the Court to order City of Montgomery police officers are trespassing San Souci Apartments, 547 South Perry Street. City of Montgomery police officers are trespassing 529 South Perry St., private property of the Plaintiff's landlord, The Stowers Management, 1631 East Fairview Avenue.

_____
*(original signature of plaintiff)*

547 SOUTH PERRY STREET
_____

APARTMENT   10
_____

MONTGOMERY, ALABAMA   36104
_____
*(address of plaintiff)*


Stephanie Mohr, a former Prince George County police officer, was sentenced by the federal court to serve 10 years in an Alderson, West Virginia prison. Stephanie Mohr released her police dog named Valk on Ricardo Mendez, who is a minority from San Salvador, on or about September 21, 1995.  The United States Justice Department, Civil Rights Division, prosecuted Stephanie Mohr five later in 2000, with the assistance from civil right organizations, and convicted Stephanie Mohr of police brutality.  But the civil rights violations, constitutional deprivations, and the menacing practices of these City of Montgomery Defendants from the State of Alabama, and the multiple incidents of City of Montgomery harassments outlined in this federal case against City of Montgomery Defendants Bobby Bright and Art Baylor make STEPHANIE MOHR look like a SUNDAY SCHOOL TEACHER.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

BILL LIETZKE,                          *

            PLAINTIFF,   *

                   *

V.                                     *      2:07-CV-324-WHA

                   *

                   *

CITY OF MONTGOMERY, ET AL,             *      FIRST DEGREE CRIMINAL TRESPASSING
BOBBY BRIGHT, ART BAYLOR,                     CONSTITUTIONAL DEPRIVATIONS
State of Alabama police                *      CIVIL RIGHTS VIOLATIONS
officers employed by the                      COMMON LAW NEGLIGENCE
Alabama City of Montgomery             *      HARASSMENT
who are responsible for
all incidents stated in the            *
Plaintiff's Complaint, all
others whose true names                *
and legal descriptions are
unknown to the Plaintiff,              *

        DEFENDANTS.   *

    1.   Jurisdiction founded on the existence of a federal
question and amount in controversy.

    2.   The action arises out of the Constitution of the
United States, Article III, Section II, as hereinafter more
fully appears.

3.    The relief I want the court to order is:

☐    Damages in the amount of:    $ 2,000,000,000.00

☐    An injunction ordering: City of Montgomery Defendants are trespassing the Plaintiff's residential structure, 547 South Perry Street, San Souci Apartment.  Montgomery police officers keep off premises of 547 South Perry Street.  City of Montgomery Defendants are trespassing 529 South Perry Street, private property of the Plaintiff's landlord, The Stowers Company.

Grove Street at South Court Street and Grove Street at South MCDonough Street intersections are shut down and closed out permanently.



*(original signature of plaintiff)*

_____

_____

_____

*(address of plaintiff)*

    Stephanie Mohr, a former Prince George County police officer, was sentenced by the federal court to serve 10 years in an Alderson, West Virginia prison.  Stephanie Mohr released her police dog named Valk on Ricardo Mendez, who is a minority from San Salvador, on or about September 21, 1995.  The United States Justice Department, Civil Rights Division, prosecuted Stephanie Mohr five years later in 2000, with the assistance from civil rights organizations, and convicted Stephanie Mohr of police brutality.  But the civil right violations, constitutional deprivations, and the menacing practices of these City of Montgomery Defendants from the State of Alabama, and the multiple incidents of City of Montgomery harassments outlined in this federal case against City of Montgomery Defendants Bobby Bright and Art Baylor make STEPHANIE MOHR look like a SUNDAY SCHOOL TEACHER.

U.S. District Court (Rev. 12/2000)                3

Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2007 APR 24  A  9: 24

BY _____ DEPUTY

BILL LIETZKE                              *

547 SOUTH PERRY STREET

APARTMENT 10                              *

MONTGOMERY, ALABAMA  36104

*(Full name and address of the plaintiff)*

        **Plaintiff(s)**            *

        vs.

RDB 07 CV 1061

2.07 CV 383-WKW

Civil No.: _____
*(Leave blank.  To be filled in by Court.)*

REESE MCKINNEY          D. T. MARSHALL

100 SOUTH LAWRENCE STREET    115 SOUTH PERRY STREET

MONTGOMERY, ALABAMA    MONTGOMERY, ALABAMA


*(Full name and address of the defendant(s))*

        **Defendant(s)**          ********


**COMPLAINT**

1.    Jurisdiction in this case is based on:

      ❑    Diversity (none of the defendants are residents of the state where plaintiff is a resident)

      ☒    Federal question (suit is based upon a federal statute or provision of the United States Constitution)

      ❑    Other (explain) __DO NOT TRANSFER TO ALABAMA INCOMPETENT__

            __COURTS.  THAT IS WHAT "ALL OF THEM" WANT.__

            _____

U.S. District Court (Rev. 12/2000)                    1

SCANNED
050307

1.  On August 2, 1999, by and through its agent sheriff's officers, County of Montgomery Defendants entered the Plaintiff's residential structure, San Souci Apartments, 547 South Perry Street in brown marked cars, proceeded to the second floor of San Souci Apartments, 547 South Perry Street and approached the Plaintiff.  County of Montgomery Defendants alleged, "Bill Lietzke?"  When the Plaintiff acknowledged he's Bill Lietzke, County of Montgomery Defendants handcuffed, abducted, and carried the Plaintiff to Jackson Hospital, 1725 Pine Street, Montgomery, Alabama where the Plaintiff was incarcerated in a restrictive environment and could not leave.

2.  County of Montgomery Defendants placed the Plaintiff in a wheelchair and shoved the Plaintiff in the wheelchair inside Jackson Hospital, 1725, Pine Street, Montgomery, Alabama.  The Plaintiff was imprisoned inside Jackson Hospital, 1725 Pine Street for 2 days and the Plaintiff was also forced to sign documents.

3.  On August 9, 1999, County of Montgomery Defendants returned to Jackson Hospital, 1725 Pine Street, placed shackles and chains around the Plaintiff's arms and legs, and carried the Plaintiff to the probate court of Montgomery County, 100 South Lawrence Street, Montgomery, Alabama.  Present in this probate court were approximately 4 sheriff's officers, a psychiatrist known as Margaret Bok, a lawyer known as Sylvester Smith, a probate judge known as Reese Mckinney, and an unidentified probate court lawyer.  Reese Mckinney stated that it was ordered that the Plaintiff be removed to the "Alabama Department of Mental Health."  County of Montgomery Defendants seized the Plaintiff in shackles and chains and carried the Plaintiff back to Jackson Hospital, 1725 Pine Street.

2.    The facts of this case are:  3.  On August 11, 1999, County of

Montgomery Defendants returned to Jackson Hospital, 1725 Pine St.,

placed shackles and chains around the Plaintiff's arms and legs,

and carried the Plaintiff to Greil Memorial Psychiatric Hospital,

2140 Upper Wetumpka Road, Montgomery, Alabama where the Plaintiff

was imprioned in a restrictive environment and could not leave.

    4.  In the intervening 69 days following the Plaintiff's false

imprisonment, the Plaintiff was subjected to inappropriate

medications and improper medical care, and the Plaintiff was forced

to sign documents in order to be discharged from Greil Memorial

Psychiatric Hospital.  Unidentified adult males punctured the

Plaintiff with large hyperdermic needles withdrawing the Plaintiff's

blood.  The Plaintiff was taken from Greil Memorial Psychiatric

Hospital, 2140 Upper Wetumpka Road, Montgomery, Alabama to other

Montgomery, Alabama locations where unidentified adult males

punctured the Plaintiff with large hyperdermic needles, and was

taken back to Greil Memorial Psychiatric Hospital, 2140 Upper

Wetumpka Road.

    5.  On October 19, 1999, the Plaintiff was discharged from

Greil Memorial Psychiatric Hospital, 2140 Upper Wetumpka Road by

Montgomery psychiatrist Roy Pasker.

    6.  On December 19, 2002, by and through its sheriff's officers,

County of Montgomery Defendants entered the private parking lot of

Regions Mortgage, Inc., 555 South Perry Street, next door to San

Souci Apartments, 547 South Perry Street in a brown marked van,

preceded to Governor's Apartments, 547 South Perry Street, Apt. 10
and knocked on the Plaintiff's door. When the Plaintiff answered
the door, County of Montgomery Defendants alleged, "Bill Lietzke?"
When the Plaintiff acknowledged he's Bill Lietzke, County of
Montgomery Defendants placed shackles and chains around the
Plaintiff's arms and legs, abducted the Plaintiff, and carried the
Plaintiff directly to Greil Memorial Psychiatric hospital, 2140
Upper Wetumpka Road, Montgomery, Alabama where the Plaintiff was
incarcerated in a restrictive environment and could not leave.

     7.   In the intervening days following the Plaintiff's false
imprisonment, the Plaintiff was subjected to inappropriate
medications and improper medical care, and the Plaintiff was forced
to sign documents in order to be discharged from Greil Memorial
Psychiatric Hospital, 2140 Upper Wetumpka Road, Montgomery, Alabama.
Unidentified adult males punctured the Plaintiff with large
hyperdermic needles withdrawing the Plaintiff's blood.  The
Plaintiff was taken from Greil Memorial Psychiatric Hospital, 2140
2140 Upper Wetumpka Road to another Montgomery, Alabama location
where the Plaintiff was forced to undergo X-ray tests and was taken
back to Greil Memorial Psychiatric Hospital, 2140 Upper Wetumpka Road.

     8.   On December 23, 2002, County of Montgomery Defendants returned
to Greil Memorial Psychiatric Hospital, 2140 Upper Wetumpka Road,
placed shackles and chains around the Plaintiff's arms and legs, and
carried the Plaintiff to the probate court of Montgomery County,
100 South Lawrence Street, Montgomery, Alabama.  Present in this
probate court were approximately 4 sheriff's officers, a lawyer known
as Sylvester Smith, an unidentified probate court judge, and an
unidentified probate court lawyer.  This probate judge stated that
it was ordered that the Plaintiff be removed to Greil Memorial
Psychiatric Hospital, 2140 Upper Wetumpka Road.

County of Montgomery Defendants seized the Plaintiff and carried

the Plaintiff back to Greil Memorial Psychiatric Hospital, 2140

Upper Wetumpka Road.

9.   On January 6, 2003, the Plaintiff was discharged from

Greil Memorial Psychiatric Hospital, 2140 Upper Wetumpka Road by

Montgomery Psychiatrist Roy Pasker providing the Plaintiff report

to Montgomery Area Mental Health Authority, 101 Coliseum Boulevard,

Montgomery, Alabama every four weeks as a condition of the

Plaintiff's discharge.

10.  The Plaintiff avers that County of Montgomery Defendants

took, held, detained, and arrested the Plaintiff and carried the

Plaintiff into another part of the same county and are therefore

guilty of first degree kidnapping.

11.  The Plaintiff avers that County of Montgomery Defendants

detained the Plaintiff intentionally and unlawfully and without

authority of law.

12.  The Plaintiff avers that County of Montgomery Defendants

are therefore guilty of kidnapping if the Plaintiff was

intentionally and unlawfully confined.

13.  The Plaintiff avers that County of Montgomery Defendants

intentionally confined the Plaintiff without lawful privilege

and against the Plaintiff's consent within a limited area for

extended periods of time.

14.  The Plaintiff avers that County of Montgomery Defendants

deprived the Plaintiff of liberty and freedom of movement and

compelled the plaintiff to remain where the Plaintiff didn't wish

to remain.

15.  The Plaintiff avers that County of Montgomery Defendants

struck, shoved, kicked, or otherwise touched the Plaintiff and

subjected the Plaintiff to unlawful physical contacts and

3.    The relief I want the court to order is:

❑    Damages in the amount of: $900,000,000.00

❑    An injunction ordering: County of Montgomery Defendants serve not less than 10 years in a maximum security state prison. All original document, all records, all photographs, and any other written material from Greil Memorial Psychiatric Hospital, 2140 Upper Wetumpka Road pertaining to the Plaintiff and pertaining to the information provided in this lawsuit against County of Montgomery Defendants produced, identified, and forwarded immediately to the United States District Court, For the District of Maryland, 101 West Lombard Street, Baltimore Maryland. County of Montgomery Defendants must produce, identify, and forward all records, documents, and photographs from Greil Memorial Psychiatric Hospital, 2140 Upper Wetumpka Road to this Court containing the information provided in this lawsuit. All original records, no copies.

❑    Other (explain)

_____
*(original signature of plaintiff)*

547 SOUTH PERRY STREET
_____

APARTMENT 10
_____

MONTGOMERY, ALABAMA  36104
_____
*(address of plaintiff)*

unlawful searches and seizures in violation of the Plaintiff's First Amendment and Fourth Amendment rights of the United States Constitution.